UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

THOMAS R.,[1]                          )
                                       )
                    Plaintiff,         )
                                       )
vs.                                    )        Case No. 3:20-cv-01330-GCS[2]
                                       )
COMMISSIONER OF SOCIAL                 )
SECURITY,                              )
                                       )
                    Defendant.

MEMORANDUM & ORDER

SISON, Magistrate Judge:

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C. § 423.

PROCEDURAL HISTORY

Plaintiff filed for DIB in 2017; however, Plaintiff's claim was unsuccessful, both initially and on reconsideration. (Tr. 14). The Administrative Law Judge ("ALJ") held a hearing on August 19, 2019, at which Plaintiff was represented by counsel. *Id*. The ALJ also held a supplemental hearing on May 11, 2020, at which Steven S. Goldstein, M.D., an impartial medical expert, and Karen C. Terrill, M.S., an impartial vocational expert, both

---

[1]     In keeping with the court's usual practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* FED. R. CIV. PROC. 5.2(c) and the Advisory Committee Notes thereto.

[2]     This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. § 636(c). *See* (Doc. 11).

testified. *Id*. However, on May 22, 2020, the ALJ issued an unfavorable decision. (Tr. 11-35). The Appeals Council denied Plaintiff's request for review on October 16, 2020, making the ALJ's decision the final decision of the agency. (Tr. 6).

### ISSUES RAISED BY PLAINTIFF

Plaintiff raises the following issues on appeal:

1.    The ALJ erred in insufficiently evaluating Plaintiff's subjective pain reports when considering whether Plaintiff is limited in concentration, persistence, and pace; and

2.    The ALJ erred by crafting a mental Residual Functional Capacity ("RFC") assessment which was not supported by substantial evidence.

### APPLICABLE LEGAL STANDARDS

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his or her former occupation? and (5) Is the plaintiff unable to perform any other work?

*See* 20 C.F.R. § 404.1520.

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. A negative answer at any step, other than at step three, precludes a finding of disability. The plaintiff bears the burden of proof at steps one through four. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *See Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *See Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker*

*v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

## THE DECISION OF THE ALJ

The ALJ followed the five-step analytical framework described above. He first found that Plaintiff did not engage in substantial gainful activity from the alleged onset of his disability on July 24, 2018. (Tr. 16). The ALJ then found that Plaintiff had the following severe impairments: trigeminal neuralgia, cervical degenerative disc disease, chronic obstructive pulmonary disease, and probable conversion disorder. *Id*. These impairments significantly limited Plaintiff in her ability to perform basic work activities. *Id*. Though the ALJ noted that Plaintiff also carries a diagnosis of migraine headaches, he found that these headaches responded well to treatment with medication, thus making them non-severe. (Tr. 17).

Although Plaintiff suffered from severe impairments, the ALJ determined that these impairments and the combination of impairments did not meet or medically equal the severity of those impairments listed in 20 C.F.R. § 404. (Tr. 17).  The ALJ first found that Plaintiff's degenerative disc disease did not meet Listing 1.04 because the record did not demonstrate that Plaintiff's nerve root or spinal cord was compromised. *Id*. Next, the ALJ determined that Plaintiff's chronic obstructive pulmonary disease did not meet the objective criteria for Listing 3.02 because the record did not demonstrate sufficiently diminished lung function. *Id*.

When considering Plaintiff's mental impairments, the ALJ determined that Plaintiff's impairments did not meet or medically equal the criteria of Listing 12.02. (Tr. 17). Specifically, the ALJ found that Plaintiff had a moderate limitation in understanding,

remembering, and applying information. (Tr. 18). Although Plaintiff testified as to memory loss in 2019, the ALJ noted that the record did not show that he suffered from difficulties in his daily activities, and Plaintiff's nurse practitioner made little mention of Plaintiff experiencing difficulties in this area. *Id.* The ALJ also found that Plaintiff had a moderate limitation in interacting with others and in adapting or managing himself. *Id.*

Especially pertinent to Plaintiff's appeal, the ALJ found that Plaintiff had a moderate limitation in concentration, persistence, and maintenance of pace. (Tr. 18). Though Plaintiff indicated some difficulties in this area of functioning, the ALJ pointed out that he was able to drive, thus demonstrating an ability to concentrate on a task and maintain pace with traffic. *Id.* He was also able to complete simple household chores and to use a computer on a daily basis, which likewise demonstrated the ability to concentrate on simple tasks. *Id.*

In arriving at this conclusion, the ALJ paid particular attention to the testimony provided during the August 19, 2019 hearing and the May 11, 2020 hearing. (Tr. 20, 21). During the former hearing, Plaintiff testified that he lived with constant and unbearable daily pain in his teeth, neck, face, and head. (Tr. 20). The ALJ noted that Plaintiff testified that the pain was so bad that he contemplated suicide, and his medication did not fully alleviate the pain. *Id.* During the May 11, 2020 hearing, Neurologist Steven Goldstein, M.D., provided testimony regarding Plaintiff's pain. (Tr. 21). Plaintiff provided additional testimony regarding his pain. He stated that he refused ambulances for transportation to the emergency room because he felt a hospital would not help him. *Id.* Plaintiff asserted that his pain limited his ability to concentrate. *Id.*

The ALJ noted that Plaintiff's testimony regarding his pain had little support in the medical record and was contradicted by multiple findings from Plaintiff's physicians. (Tr. 21). Plaintiff's neurologist, Michael Liu, M.D., saw Plaintiff on October 28, 2016. He found that Plaintiff's trigeminal neuralgia was stable, with intermittent but reduced pain. *Id*. Dr. Liu also found that Plaintiff's neurology was normal during a second examination on April 24, 2017. *Id*. On August 23, 2017, Dr. Brett Taylor, M.D., found that Plaintiff displayed "non-organic findings," which were consistent with symptom magnification, rather than a result of his spinal condition. (Tr. 22). Dr. Taylor also found no observable symptoms during a second examination in October 2017. The ALJ further pointed out that Plaintiff did not mention severe pain when asked about his trigeminal neuralgia during a March 15, 2018 consultation with Raymond Leung, M.D. (Tr. 22). The ALJ found the opinion of Dr. Taylor to be persuasive. (Tr. 25). However, the ALJ found that Dr. Liu's opinion was not persuasive as to Plaintiff's disability, though it contained factual data that could be considered along with and in the context of other evidence in the record. (Tr. 26).

The ALJ also considered whether Plaintiff's mental health treatment providers indicated that Plaintiff experienced pain so debilitating that it limited his ability to concentrate, persist, or maintain pace. On March 15, 2018, Plaintiff saw Dr. Vincent and reported that he was unable to work due to his pain; however, he did not mention any mental impairment. (Tr. 22). Dr. Vincent described Plaintiff's depression, but he did not otherwise indicate that Plaintiff had diminished mental capacity. *Id*. Plaintiff saw Dr. Vincent again in October 2019. (Tr. 23). During this examination, Plaintiff was unable to

identify the year, time of day, or nature and purpose of the examination. *Id*. However, the ALJ noted that two weeks later, on November 1, 2019, Dr. Vincent's neurologic nurse practitioner found that Plaintiff's mood and affect, comprehension, and orientation were all normal. *Id*.

The ALJ noted that Dr. Vincent's second examination stood "in stark contrast" to the rest of the evidentiary record. (Tr. 23). For example, Plaintiff saw Sonya Schleeper, M.D., on September 17, 2018; Dr. Schleeper found that Plaintiff had no mental health or memory issues during the examination. Dr. Schleeper made the same findings on February 13, 2019; April 24, 2019; May 17, 2019; and July 31, 2019; she noted only once, in April, that Plaintiff's pain interfered with his thinking processes, but she declined to refer Plaintiff to a specialist. *Id*. Dr. Schleeper ultimately opined that Plaintiff was unable to work due to his pain; however, because this opinion stood in contrast to her own treatment notes, the ALJ found it unpersuasive. (Tr. 25-26).

In addition to examining the evidentiary record, the ALJ recounted important testimony from the evidentiary hearing when making his decision. During the hearing, Plaintiff experienced a "pain attack," during which the hearing was paused while Plaintiff "hunched over, moaned, and became completely unresponsive." (Tr. 24). Because Plaintiff failed to respond to anyone who asked him how to assist him, the ALJ directed staff to call 9-1-1. *Id*. However, at that time, Plaintiff suddenly responded that he did not need emergency services, his "pain attack" subsided, and the hearing resumed. *Id*. In the context of reports finding symptom magnification, the ALJ found that this incident was evidence that Plaintiff may have been exaggerating his pain. *Id*.

The ALJ also asked Dr. Goldstein to testify as an independent medical expert during the evidentiary hearing. (Tr. 27). Dr. Goldstein explained that neck pain radiating into the shoulder and face are not proper pain distributions for trigeminal neuralgia. *Id*. He further stated that although pain can impact an individual's ability to concentrate or focus, he did not see enough evidence in the record to find that Plaintiff's pain significantly detracted from his ability to concentrate. *Id*. As the ALJ later noted in his own findings, Dr. Goldstein observed that Plaintiff testified as to constant severe pain, but his neurology records and his failure to seek stronger pain medication contradicted this testimony. *Id*. The ALJ found Dr. Goldstein's opinion persuasive. *Id*. After careful consideration of the record, the ALJ limited Plaintiff to the following mental RFC: "[t]he claimant is limited to work involving simple, routine tasks and simple work-related decisions. He can perform work that involves occasional interaction with coworkers and the public but can never perform fast-paced work such as work on an assembly line." (Tr. 19).

### THE EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. Because Plaintiff raises issues pertaining to Plaintiff's mental capacities only, the Court's summation of the record is limited to evidence pertaining to these issues only.

### 1.     Evidentiary Hearing

Plaintiff was represented by an attorney during both the August 19, 2019 and the May 11, 2020 hearing. (Tr. 72, 38). When asked about his current weight, Plaintiff

explained that he had been losing weight because he was in pain that was too severe for him to eat. (Tr. 77). Over the course of one month, Plaintiff lost approximately twenty pounds because of his pain. (Tr. 78).

The ALJ also asked Plaintiff about his current capabilities, including whether he could drive a car to travel. (Tr. 78). Plaintiff explained that he was able to drive approximately one hour away from his residence to attend doctors' appointments and to shop for groceries, but that he had to plan an additional half an hour of travel time in case he needed to pull over due to his pain. (Tr. 79). Occasionally, Plaintiff would make it only fifteen to twenty minutes into his commute before needing to turn around and go home because of his pain. (Tr. 80).

When asked for the main reason he was unable to work, Plaintiff explained that he experienced too much pain in his neck, face, head, and teeth. (Tr. 83-84). While the ALJ was pursuing this line of questioning, Plaintiff began having difficulty talking. (Tr. 85). The Court went off the record in order to take a break when Plaintiff stated that he was experiencing pain. *Id*. When the Court came back on the record, Plaintiff explained that he would seek treatment for his teeth, but no dental care was available to mitigate the pain. (Tr. 86). Although Plaintiff claimed his pain was so severe that it made him consider suicide, his dentists were unable to locate any problems with his teeth. (Tr. 89).

When asked about his "pain attack" during the hearing, Plaintiff explained that he experienced pain in his neck and behind his ear. (Tr. 91). Plaintiff stated that he experiences this pain ninety percent of the time, though not for twenty-four hours a day. (Tr. 92). This pain would radiate down Plaintiff's neck and shoulder to his mid-back. *Id*.

Plaintiff also testified that "unless [he is] in pain at the time," he doesn't think about the pain, and may forget about his past treatment or symptoms. (Tr. 86). Although Plaintiff stated that he had memory issues, he also claimed that he did not know for how long he had experienced difficulties with his memory. (Tr. 87). He also explained that he believed his medication was the cause of his memory difficulties. *Id*. The ALJ found Plaintiff's memory issues particularly concerning; he therefore postponed the remainder of the hearing so that Plaintiff could undergo a psychological evaluation. (Tr. 94).

The ALJ resumed the evidentiary hearing on May 11, 2020. (Tr. 38). Dr. Goldstein provided testimony first during the second hearing. (Tr. 42). Dr. Goldstein confirmed that he reviewed the evidence on the record, including Plaintiff's recent psychiatric evaluation. (Tr. 43). After doing so, he opined that Plaintiff struggled with chronic lung disease, potential alcohol use problems, facial pain, including trigeminal neuralgia, degenerative disc disease in Plaintiff's cervical spine, and a severe tooth infection. (Tr. 44-45).

Dr. Goldstein was particularly skeptical of Plaintiff's claim of facial pain due to his trigeminal neuralgia. (Tr. 45). According to Dr. Goldstein, pain from this condition "never radiates into the shoulder." *Id*. Furthermore, while Plaintiff claimed his pain would "jump" to both sides of his face, Dr. Goldstein explained that such bilateral pain in the face from this condition was extremely rare. *Id*. In fact, the single article Dr. Goldstein discovered on the condition stated that a neurosurgeon in China had operated on thirteen patients with the condition and who had bilateral facial pain symptoms; however, this article did not provide a basis for determining how many patients were in a potential

control group that did not include those symptoms. *Id*.

Dr. Goldstein did not find that Plaintiff's limitations met or equaled any impairment in the listings. (Tr. 46). Instead, he opined that Plaintiff could conduct light or even medium level activity with these limitations. *Id*. Plaintiff could frequently climb ramps, ladders, ropes, scaffolds, and stairs. *Id*. He could also bend, stoop, squat, crouch, and crawl. *Id*. Regarding Plaintiff's facial pain, Dr. Goldstein stated that Plaintiff's pain was not likely to be so severe as to impact Plaintiff's concentration because Plaintiff's medical records did not indicate such pain. (Tr. 47). However, Dr. Goldstein also admitted that he had no experience with psychological examinations. (Tr. 48-49).

After Dr. Goldstein completed his testimony, the ALJ asked Plaintiff to describe his pain since the last hearing. (Tr. 55). Plaintiff explained that his pain was "like 1,000 burning needles," and was often a sharp pain. *Id*. He would experience this pain at least weekly, and often when the wind blows on his head. (Tr. 56). Plaintiff claimed that he went to a local hospital at some point in 2019, but the hospital told him that they did not know how to treat him and told him to leave. (Tr. 58). As a result, Plaintiff did not want to go to hospitals for treatment. *Id*. Plaintiff also explained that he often forgot what he was doing while completing household chores, including laundry. (Tr. 61). He also regularly forgets birthdays and gets confused when completing tasks. *Id*.

The ALJ also called vocational expert ("VE") Karen Terrill to testify during the evidentiary hearing on May 11, 2020. (Tr. 49). The ALJ asked Ms. Terrill whether jobs existed for an individual who could not climb ladders, ropes, or scaffolds, but could occasionally climb stairs and ramps; who could occasionally stoop, kneel, crouch, and

crawl; who needed to avoid exposure to pulmonary irritants; and who was limited to work involving simple routine tasks and simple-work related decisions, with only occasionally public interaction, not at a fast pace. (Tr. 63). Mr. Terrill found that work at a light, unskilled level would exist for such an individual. *Id*.

### 2.    Medical Records

Plaintiff first saw neurologist Dr. Liu on October 28, 2016. (Tr. 405). Dr. Liu noted that Plaintiff reported neck, shoulder, and lower facial pain, and that he had mild tenderness over the shoulder. *Id*. Although Dr. Liu considered trigeminal neuralgia, he believed that Plaintiff's pain was more consistent with a soft tissue injury from a previous workplace incident rather than the degenerative disease. *Id*. However, during a six-month follow-up, Dr. Liu's college and nurse practitioner Keiko Sawano found that Plaintiff experienced trigeminal neuralgia and cervicalgia with neck pain. (Tr. 412). Plaintiff's reports of pain continued to expand while he saw Dr. Liu and his associates; by November 17, 2017, Plaintiff stated that he felt pain on both sides of his face. (Tr. 415).

On October 5, 2017, Plaintiff reported to Dr. Schleeper that he experienced a lower backache; Dr. Schleeper recorded that Plaintiff had arthralgia of the right shoulder and neuralgia right shoulder pain. (Tr. 455). Plaintiff stated that he took medication for the pain, including diclofenac, cyclobenzaprine, oxycodone, and phenytoin. (Tr. 452). These medications helped Plaintiff control his pain. (Tr. 453). However, Plaintiff again saw Dr. Schleeper on November 6, 2017; this time, he did not report facial or head pain. (Tr. 443-444).

Dr. Brett Taylor provided an independent medical evaluation of Plaintiff on August 23, 2017. (Tr. 498). Dr. Taylor noted that Plaintiff reported neck pain, left and right arm pain, and pain in his upper back, shoulders, and legs. (Tr. 500). Plaintiff also rated his pain between a seven and ten on a ten-point scale. *Id*. When asked for the region with the most pain, Plaintiff pointed to his thoracic spine and right paraspinals. (Tr. 501). After examining Plaintiff in person and reviewing his medical charts, Dr. Taylor determined that Plaintiff "displays non-organic findings and these manifestations are consistent with symptom magnification." (Tr. 507).

On March 15, 2018, Plaintiff saw Dr. Vincent on referral from an adjudicator for the Department of Disability Determination Services for a mental status examination. (Tr. 383). Dr. Vincent reported that Plaintiff described facial and neck pain during his evaluation; he also discussed an inability to function due to his pain. (Tr. 384). However, Plaintiff also was oriented to person, place, and time during the mental status examination, despite his pain. (Tr. 385). Dr. Vincent found that Plaintiff had symptoms of depression but was otherwise cognitively intact during the examination. (Tr. 386).

Dr. Leung also examined Plaintiff on March 15, 2018. (Tr. 478). During the examination, Plaintiff stated that he experienced back pain and right leg numbness, but that injections to his neck had helped with the pain. *Id*. He also reported that he experienced tooth pain. *Id*. Dr. Leung found that Plaintiff's sensation was within normal limits, despite his numbness. (Tr. 480). He also pointed out that Plaintiff only described dental pain when asked about his trigeminal neuralgia, rather than pain in his neck and head. *Id*.

Plaintiff also saw Dr. Ryan Bemis, D.C., for pain in his back and shoulders. On March 15, 2018, Plaintiff reported pain at a seven out of ten. (Tr. 547). However, by July 27, 2018, Plaintiff reported to Dr. Bemis that he experienced pain at a five out of ten in his shoulders.

ANP-BC Tammie L. Blevins, a practitioner in Dr. Schleeper's office, examined Plaintiff for pain management on May 2, 2018. (Tr. 666). During this examination, Plaintiff stated that he had neuralgic pain in his right face, upper back, shoulder, and arm. (Tr. 651). He also stated that past epidural injections helped him manage the pain. *Id*. However, by February 13, 2019, Plaintiff explained that he did not want to take different medications to control his pain, despite his pain getting worse over time. (Tr. 692).

On June 15, 2019, Plaintiff went to the emergency room by ambulance for a migraine headache which had started approximately four days prior to his visit. (Tr. 601). Treating physicians found that Plaintiff had acute, poorly-controlled migraine headaches with resistance to treatment. (Tr. 604). As Plaintiff's condition was stable, he was discharged the same day. *Id*. Dr. Liu confirmed this diagnosis on June 25, 2019, when Plaintiff reported intermittent but very sharp pain triggered by lights and noise. (Tr. 619).

Dr. Vincent provided a second mental status examination for Plaintiff on October 17, 2019, after the initial evidentiary hearing in this case. (Tr. 845). During the examination, Plaintiff seemed confused and struggled to respond to test demands without prompting from the examiner. *Id*. He presented with changes in speech and language, and his comprehension was poor. (Tr. 846). Dr. Vincent also found that Plaintiff's memory had changed; Plaintiff was now slower to retrieve information from

working and short-term memory, and he demonstrated diminished capacity in executive functions. *Id*. Overall, Dr. Vincent found that Plaintiff's difficulties were related to possible conversion disorder or secondary gains. (Tr. 848).

### 3.    The State Agency Consultant's Review

State Agency Consultant ("SAC") Donald Henson, Ph.D., examined Plaintiff's medical records on March 29, 2018. (Tr. 102). Dr. Henson found that Plaintiff had the medically determinable impairments of spine disorders, COPD, and depressive, bipolar, and related disorders. (Tr. 101). However, the latter impairment was not severe. *Id*. Specifically, although Plaintiff had limitations in understanding, remembering and applying information; interacting with others; concentrating, persisting, and maintaining pace, and adapting or managing himself, each of these limitations were mild. *Id*.

SAC Lenore Gonzalez evaluated Plaintiff's physical symptoms on April 3, 2018. (Tr. 105). Although Dr. Gonzalez noted that Plaintiff experienced non-episodic pain in his teeth, he also found that this pain did not keep him from performing potential work. *Id*. Dr. Gonzalez found that Plaintiff was not disabled. (Tr. 107). SAC Richard Bilinsky, M.D., evaluated Plaintiff at the reconsideration level on June 21, 2018. (Tr. 122). However, Dr. Bilinsky confirmed Dr. Gonzalez's findings of non-episodic dental pain and found that the prior decision was substantively correct. *Id*.

## ANALYSIS

### I.    Whether the ALJ erroneously discounted Plaintiff's subjective reports of pain.

Plaintiff first asserts that the ALJ failed to properly evaluate and consider

Plaintiff's reports of disabling pain. (Doc. 22, p. 5). Specifically, Plaintiff alleges that the ALJ relied on conflicting medical evidence in order to discount Plaintiff's credibility when testifying as to how his pain impacts his ability to remember, concentrate, and focus. *Id.* For example, Plaintiff notes that the ALJ pointed to the August 23, 2017 examination, in which Dr. Taylor noted that Plaintiff both claimed to have had past spinal problems and denied having prior treatment. *Id.* However, Plaintiff asserts that the statement is consistent with Plaintiff's reports of memory problems, rather than indicating a lack of credibility. *Id.* Plaintiff also notes that the ALJ found Plaintiff had not been to the emergency room for pain, though Plaintiff did undergo physical therapy, injections, chiropractic treatments, and a significant medication regimen in order to manage his pain. *Id.*[3] In response, Defendant notes that the ALJ did not discount Plaintiff's subjective pain reports without reason. (Doc. 25, p. 4). Instead, he relied on Dr. Goldstein's testimony during the evidentiary hearing in order to resolve the discrepancies in the record and obtain an outside opinion about Plaintiff's level of pain. *Id.*

The Court is to give considerable deference to an ALJ's finding of credibility; it should be upheld unless "patently wrong." *Schaaf v. Astrue,* 602 F.3d 869, 875 (7th Cir. 2010). When an ALJ's credibility determination is supported by the record, the Court will not overturn it. *See Green v. Saul*, No. 19-1192, 781 Fed. Appx. 522, 526 (7th Cir. July 23,

---

[3]     Plaintiff also argues that the ALJ failed to appropriately consider eight factors for evaluating a plaintiff's level of pain outlined in Social Security Ruling ("SSR") 96-7p. (Doc. 22, p. 4). However, as Defendant points out, the later SSR 16-3 superseded SSR 96-7p. The Court therefore declines to consider the ALJ's use of these factors at this time.

2019). ALJs are not required to examine each of a plaintiff's allegations individually for credibility. *See Sawyer v. Colvin*, No. 12-1749, 512 Fed. Appx. 603, 608 (7th Cir. Mar. 7, 2013) (internal citations omitted). Instead, it "is enough that in view of the record as a whole, the ALJ's determination rests on substantial evidence." *Id.* (internal citations omitted). Essential to that consideration is evidence of the plaintiff's daily-living activities. *See Pepper v. Colvin*, 712 F.3d 351, 369 (7th Cir. 2013).

Equally, an ALJ may also consider testimony from medical experts during the evidentiary hearing when evaluating reports of Plaintiff's subjective pain. This evidence is particularly useful when the record otherwise provides contradictory, inconsistent, or confusing evidence regarding a plaintiff's pain. *See Apke v. Saul*, No. 19-2582, 817 Fed. Appx. 252, 256-257 (7th Cir. July 16, 2020) (internal quotations omitted). The use of such an expert assists the ALJ in avoiding the temptation to "play doctor" by evaluating the medical evidence on his or her own. *See Gebauer v. Saul*, No. 19-1540, 801 Fed. Appx. 404, 408 (7th Cir. Jan. 17, 2020). An ALJ may reasonably rely on this evidence even where it conflicts with other testimony from a plaintiff or with other medical evidence in the record. *See Saunders v. Saul*, No. 18-2910, 777 Fed. Appx. 821, 825 (7th Cir. June 28, 2019).

The ALJ in this case reasonably relied on Dr. Goldstein's testimony during the evidentiary hearing in order to evaluate Plaintiff's subjective pain complaints.  Prior to the hearing, Dr. Goldstein reviewed all of the medical evidence in the record. (Tr. 43). He then testified that Plaintiff was capable of conducting light or medium activity, with occasional ladder climbing, frequent stair and ramp climbing, frequent bending, stooping, squatting, crouching, and crawling, with no concentrated exposure to

pulmonary irritants. (Tr. 46). This opinion is reflected in the ALJ's eventual RFC. (Tr. 27).

Dr. Goldstein also testified regarding Plaintiff's facial pain. Specifically, Dr. Goldstein rejected the notion that Plaintiff's pain would cause limitations in his concentration, as Plaintiff neither frequently called doctors regarding his pain nor visited the emergency room for treatment. (Tr. 47). In explaining his reliance on Dr. Goldstein's testimony, the ALJ noted that the opinion was based on a thorough review of the record, was supported by objective facts, and that Plaintiff's facial pain claims fell within the purview of Dr. Goldstein's area of expertise, which was neurology. (Tr. 27). This explanation sufficiently clarifies the ALJ's reasoning for rejecting Plaintiff's subjective pain reports. Though Plaintiff may want the ALJ to have preferred his testimony and the medical evidence that supported his account, the ALJ provided appropriate reasoning as to why he did not do so.

Furthermore, in addition to relying on Dr. Goldstein's opinion, the ALJ noted that Plaintiff's testimony was contradicted not only by treatment notes from other neurologists, including Dr. Liu, Dr. Leung, and Dr. Schleeper, but also by his own actions during the evidentiary hearing. (Tr. 24). The ALJ explained thoroughly why the evidence provided in each treatment note weighed against finding that Plaintiff was in debilitating pain. He also pointed out that Plaintiff's quick recovery from his "pain attack" indicated that Plaintiff was exaggerating his symptoms when viewed in the context of these notes, including a note from Dr. Taylor, which stated that Plaintiff engaged in symptom magnification. *Id.* As the ALJ's reliance on Dr. Goldstein's testimony and the opinions and findings of Plaintiff's other treatment providers is not clear error, the Court finds no

reason to remand on this issue.

## II.     Whether the ALJ's RFC is supported by substantial evidence.

Plaintiff argues that the ALJ failed to appropriately consider Dr. Vincent's opinion regarding his probable conversion disorder. (Doc. 22, p. 8). According to Plaintiff, the pertinent evidence is Dr. Vincent's October 2019 report, in which Dr. Vincent provided a statement outlining marked limitations in Plaintiff's ability to make judgements on simple, work-related decisions, as well as moderate limitations in carrying out simple instructions and understanding and remembering such instructions. *Id*. *See also* (Tr. 850). Dr. Vincent diagnosed Plaintiff with major neurocognitive disorder and probable conversion disorder. *Id*. Though the ALJ found this opinion unpersuasive, Plaintiff argues that Dr. Vincent's is the only opinion to consider this disorder and provide a potential RFC accounting for it. (Doc. 22, p. 8). Accordingly, Plaintiff argues that in ignoring this opinion, the ALJ impermissibly substituted his own opinion for that of Dr. Vincent. *Id*.

Defendant provides a contrasting framework from which to evaluate the ALJ's finding of Dr. Vincent's opinion as unpersuasive. Though Dr. Vincent opined as to possible conversion disorder, many medical experts provided their opinion as to Plaintiff's memory and cognitive functions. (Doc. 25, p. 6). For example, during a September 18, 2018 examination, Dr. Schleeper found that Plaintiff had normal orientation and did not comment as to memory issues. (Tr. 678-681). When she re-examined Plaintiff in February 2019, Dr. Schleeper again chose to omit mention of any diminished mental capacity. (Tr. 694-695). Even Dr. Vincent's initial March 2018

examination of Plaintiff presented findings contradicting his October 2019 opinion; during that examination, Dr. Vincent found that Plaintiff had logical, coherent, and relevant thoughts with good analytical and discriminatory thinking, as well as normal results on a memory test with one simple division error. (Tr. 385). Because the ALJ weighed each opinion and found that Dr. Vincent's opinion was not persuasive, Defendant asserts that Plaintiff's insistence that the ALJ rely on Dr. Vincent's later opinion is no more than a mere call for the Court to reweigh the evidence in this case. (Doc. 25, p. 6).

When crafting an RFC, an ALJ may not stray beyond his expertise as an adjudicator into the "forbidden territory of 'playing doctor.'" *Mandrell v. Kijakazi*, 25 F.4th 514, 518 (7th Cir. 2022)(quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)). Reversal is applicable if an ALJ makes his or her own medical determinations because "there is always a danger when lawyers and judges attempt to interpret medical reports." *Israel v. Colvin*, 840 F.3d 432, 439 (7th Cir. 2016)(citing *Browning v. Colvin*, 766 F.3d 702, 705 (7th Cir. 2014)). An example of this is demonstrated in *Blakes ex rel. Wolfe v. Barnhart*, where the ALJ erred by succumbing "to the temptation to play doctor when she concluded that a good prognosis for speech and language difficulties was inconsistent with a diagnosis of mental retardation because no expert offered evidence to that effect here." 331 F.3d 565, 570 (7th Cir. 2003).

Unlike in *Blakes*, the ALJ here cited to evidence from other medical professionals which specifically contradicted Dr. Vincent's October 2019 opinion, including an earlier opinion from Dr. Vincent himself. (Tr. 22). The ALJ also explained his reliance on Dr.

Schleeper's evaluations of Plaintiff's mental capacities and found them more reliable than Dr. Vincent's October 2019 findings. (Tr. 23). The Court therefore rejects Plaintiff's request to reweigh the evidence before the ALJ at the time of his decision. As there is no evidence that the ALJ substituted his own opinion for that of medical professionals, remand is not appropriate in this case.

CONCLUSION

The Commissioner's final decision denying Plaintiff's application for disability benefits is **AFFIRMED.** The Clerk of Court is directed to enter judgment in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED: March 29, 2022.**

Digitally signed
by Judge Sison 2
Date: 2022.03.29
11:23:57 -05'00'

_____
**GILBERT C. SISON**
**United States Magistrate Judge**